IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| PAIGE BELOATE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No 5:22-cv-06037-DGK |
| ) | |
| LOUIS DEJOY, POSTMASTER GENERAL, ) | |
| UNITED STATES POSTAL SERVICE ) | |
| ) | |
| Defendant. ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case arises out of Plaintiff Paige Beloate's employment dispute with the United States Postal Service ("USPS"). Plaintiff alleges the USPS discriminated against her after she requested an exemption from USPS's face covering mandate during the COVID-19 pandemic. Plaintiff filed a two-count complaint against Defendant Louis Dejoy, Postmaster General of the USPS alleging claims for: (1) disability discrimination; and (2) retaliation. Defendant denies all allegations.

Now before the Court is Defendant's motion for summary judgment on all counts. ECF No. 17. Finding no dispute as to any material facts and that Defendant is entitled to judgment as a matter of law, the motion is GRANTED.

### Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving parties, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under

the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of showing this lack of genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986).

To survive a motion for summary judgment, the nonmoving party must substantiate her allegations "with sufficient probative evidence that would permit a finding in [her] favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotations omitted). There is "no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011). No matter the type of case, "[w]here the record taken as a whole could not lead a trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 1042.

## Undisputed Material Facts[1]

Plaintiff was employed as a city mail carrier for USPS at its St. Joseph, Missouri, facility from 2018 until 2021. On July 17, 2020, the Mid-America District of the USPS issued a directive requiring all employees within the district to wear face coverings while at work to slow the spread

---

[1] The Court excluded asserted facts properly controverted by the parties, immaterial facts, facts not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact. The Court included facts that were not genuinely disputed by any evidence under Federal Rule of Civil Procedure 56(c)(1). Most of the facts stated in this section are taken verbatim from the parties' uncontroverted statement of facts, while others are direct quotes or summaries from undisputed documents and deposition testimony.

of the coronavirus. Due to the difficulty of maintaining six feet social distance, the policy required employees to wear face coverings while inside a postal facility, including hallways, elevators, retail counters, and common spaces. The policy did not require face coverings when employees worked outside the facility so long as social distancing was maintained and employees were not talking with another person. Any employee unable to wear a face covering for health reasons was required to provide medical documentation to the Health Unit for the Occupational Health Nurse for review.

After the face covering mandate went into effect, Plaintiff's supervisor informed her she had to wear a face covering. Plaintiff informed her supervisor she was unable to wear a face mask for health reasons. Plaintiff's supervisor said USPS would provide Plaintiff with a face shield if she provided a doctor's note. On July 22, 2020, Jackie Moser, a licensed professional counselor, diagnosed Plaintiff with Post Traumatic Stress Disorder (PTSD). Both parties agree Plaintiff's PTSD qualifies as a disability. Jackie Moser provided Plaintiff with a letter describing her condition and advised that because of Plaintiff's past trauma she was unable to wear a face mask. Jackie Moser recommended Plaintiff be allowed to wear a face shield and to take breaks as needed. USPS granted Plaintiff's reasonable accommodation request and provided her with a face shield the following week. Between July 2020 and 2021 Plaintiff was periodically reminded by her supervisor she needed to wear her face shield.

In Plaintiff's deposition testimony, Plaintiff alleges her supervisor inconsistently enforced USPS's face covering mandate at the St. Joseph facility. Plaintiff alleges throughout 2020 approximately thirty percent of employees wore face coverings on a regular basis, and that on the day she was "put off the clock"[2] only fifty percent of the employees in her vicinity were wearing

---

[2] Plaintiff uses the phrase "put off the clock" to indicate USPS placed her on temporary unpaid leave. While on temporary leave, Plaintiff used accrued time off and took advanced leave that she was required to pay back after

3

Case 5:22-cv-06037-DGK   Document 28   Filed 10/03/23   Page 3 of 12

face coverings. Plaintiff alleges her supervisor "picked and choosed [sic]" when to enforce the face covering policy, did not personally wear a face covering, and was inconsistent in choosing who he would enforce the mask policy against. Further, Plaintiff alleges her supervisor was aware of her breathing and anxiety issues and did not always require her to wear the face shield.

In February 2021, Plaintiff got a new supervisor, Jeff Crisafulli. On February 13, Crisafulli called Plaintiff into his office because she was not wearing her face shield and informed her that she was required to wear a face shield to continue working. This was only the second time Plaintiff had met Crisafulli and they had never discussed Plaintiff's disability or her prior supervisor's alleged practice of letting her work without a face shield. Plaintiff refused to wear a face shield and, as a result, was placed off the clock on February 13. Plaintiff would have been permitted to return to work had she agreed to wear a face shield. The same day Plaintiff was placed off the clock, Crisafulli told at least one other employee they needed to wear a face covering. Plaintiff believes Crisafulli told her and other employees to wear face coverings because he was bullying them, but Plaintiff could not say why he chose to bully them specifically.

After Plaintiff was placed off the clock, she provided USPS with three additional doctor's notes concerning her PTSD and difficulty wearing a face covering. The first note was from Green Family Chiropractic dated February 17, 2021, stating Plaintiff was "not advised to wear a mask because of health history." The second note was from Lisa Fisher, a licensed professional counselor, dated February 18, 2021, stating Plaintiff had been "diagnosed with chronic PTSD" and "requires a mask exemption" and that "[f]or [Plaintiff's] mental well-being, she also needs to be restricted to no more than 9 hour days and a 45 hour work week, with the flexibility to be able to pick up her children from daycare at 5:30." After receiving these doctor's notes, Plaintiff was

---

returning to work.

informed by her union steward that the notes needed to specify a face shield exemption, not just a mask exemption. Plaintiff never sought to have the notes supplemented by either Green Family Chiropractic or Lisa Fisher. The third note was from Kathleen Dudley, a reflexologist, palm reader, and sovereign citizen stating Plaintiff should receive a full exemption from the face covering mandate—including a face shield—because face coverings negatively affect every function of the body.

Plaintiff submitted a formal request for a reasonable accommodation on March 29, 2021. Plaintiff's request to be exempt from all face coverings was referred to the District Reasonable Accommodation Committee ("DRAC") per USPS policy. DRAC issued its final decision to Plaintiff in a letter dated April 29, 2021. The letter discussed that neither the note from Green Family Chiropractic nor the note from Lisa Fisher indicated Plaintiff could not wear a face shield, and that Kathleen Dudley provide no medical basis for her opinions regarding face coverings. Based on Plaintiff's refusal to wear a face shield at work, DRAC concluded "there is no way to currently accommodate you to perform all the essential functions of your job during the pandemic" because "there is no way to ensure social distancing in the facility." The letter went on to discuss that Plaintiff would receive "a light duty assignment for outside carrier work that does not include indoor casing or other indoor work." The letter stated Plaintiff's "light duty work will not exceed 9 hours per day or 45 hours per week," but USPS reserved the right to challenge the request in the future because "no medical basis for them has yet been provided." Finally, the letter stated, "As for the request to leave work by 5:30 p.m., management may work with you on that as part of your light duty offer when possible." Plaintiff alleges the light duty assignment was USPS's "hoop to jump through so they could legally bully" her.

Plaintiff returned to work under her light duty assignment on May 10, 2021, nearly three months after being placed off the clock. That same day, Crisafulli yelled at Plaintiff for not wearing a face covering while talking with a coworker in the parking lot. Plaintiff alleges she was assigned more mail on May 10 than she could deliver before 5:30 p.m., requiring her to return the undelivered mail which she believed to be a fireable offense. Plaintiff left work on May 10 at 5:30 p.m. without issue.

The next day, May 11, Crisafulli delivered a letter to Plaintiff while she was on her route stating he was treating her request to be off at 5:30 p.m. as a request for a reasonable accommodation and agreed to the request on an interim basis until DRAC reviewed the request and provided a recommendation. Plaintiff left work on May 11 at 5:30 p.m. without issue.

After May 11, Plaintiff stopped showing up for work. On May 14, 2021, Plaintiff filed her EEO complaint and provided her letter of resignation to USPS on June 8, 2021.

## Discussion

Plaintiff alleges disability discrimination (Count I) and retaliation (Count II) under the Rehabilitation Act of 1977.[3] The Rehabilitation Act provides "the exclusive remedy for employment discrimination based on disability for federal employees." *Ahmed v. Napolitano*, 825 F.Supp.2d 112, 115 (D.D.C. 2011). Under Eighth Circuit case law, claims under the Rehabilitation Act and the Americans with Disability Act of 1990 are "interchangeable." *Argenyi v. Creighton Univ.*, 703 F.3d 441, 448 (8th Cir. 2013). Claims for disability discrimination and retaliation can be proven either through direct or indirect evidence. *See Evans v. Coop. Response*

---

[3] The Court notes the parties have briefed claims for constructive discharge and hostile work environment. *See* Mot. at 37–39, 40–41, ECF No. 17; Suggestions in Opp'n at 24–25, ECF No. 25. The Court does not address these claims because Plaintiff did not plead them in her complaint, and Plaintiff cannot raise new claims on summary judgment. *See WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 231 F. Supp. 3d 313, 318 (W.D. Mo. 2017).

*Ctr., Inc.*, 996 F.3d 539, 545 (8th Cir. 2021). Absent evidence of direct discrimination—as is the case here—the Court analyzes discrimination and retaliation claims under the familiar *McDonnell Douglas* burden-shifting framework. *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004); *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013). Further, disability discrimination claims under the Rehabilitation Act can include distinct claims including disparate treatment (*i.e.*, intentional discrimination) and failure to make reasonable accommodations. *See Peebles*, 354 F.3d at 766. Even when liberally construed, Plaintiff pleads only a disparate treatment claim under Count I and cannot raise a failure to accommodate claim now at the summary judgment stage.[4] *See WireCo WorldGroup, Inc.*, 231 F. Supp. 3d 313, 318 (W.D. Mo. 2017). Accordingly, the court addresses only Plaintiff's disparate treatment and retaliation claims.

### I. Defendant has demonstrated it is entitled to summary judgment on Plaintiff's disparate treatment claim.

Count I alleges USPS discriminated against Plaintiff and treated her differently than other employees at the St. Joseph facility because of her disability. However, the record does not support Plaintiff's claim for disparate treatment.

Plaintiff has provided no evidence of direct discrimination; therefore, the Court proceeds

---

[4] The Court notes the parties briefed a failure to accommodate claim. *See* Mot. at 24–34, ECF No. 17; Suggestions in Opp'n at 20–23, ECF No. 25. As discussed above, the Court confines its discussion to Plaintiff's disparate treatment claim because she never pled a failure to accommodate claim in her complaint. Even if a failure to accommodate claim could be construed under Count I, it fails because Plaintiff does not properly contest summary judgment. Plaintiff neither cites caselaw to argue her claim survives summary judgment nor argues how her light duty assignment was not a reasonable accommodation considering the health risks associated with the COVID-19 pandemic. *See, e.g.*, *Faidley v. United Parcel Serv. of Am., Inc.*, 889 F.3d 933, 942–43 (8th Cir. 2018) ("An employer only has to provide an accommodation that is reasonable, not an accommodation the employee prefers." (cleaned up)). Nor does Plaintiff explain how being put off the clock for failing to follow USPS's face covering policy and her granted accommodation—wearing a face shield—amounts to a failure to accommodate. The Court declines to conduct legal research and construct legal arguments for Plaintiff. *See Johnson Tr. of Operating Eng'rs Loc. #49 Health & Welfare Fund v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 523 (8th Cir. 2020) ("Because the Trustees 'failed to provide meaningful legal analysis' explaining how the disputed facts supported their claim for unpaid contributions for Charps's employees, the claim could not survive the defendants' motion for summary judgment."); *United States v. Guzman-Tlaseca*, 546 F.3d 571, 578 (8th Cir. 2008) ("It is not this court's job to research the law to support an appellant's argument." (cleaned up)); *see also Steves and Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 727 (4th Cir. 2021) ("It is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel." (quoting *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010)).

under *McDonnell Douglas*'s three-step framework. First, Plaintiff must establish her prima facie case of disability discrimination. *LeBlanc v. McDonough*, 39 F.4th 1071, 1077 (8th Cir. 2022). This requires Plaintiff to establish "(1) [she] has a qualifying disability, (2) [she] is qualified to perform the essential functions of [her] position, with or without a reasonable accommodation, and (3) [she] suffered an adverse action due to [her] disability." *Id.* (citation and internal quotation marks omitted). Second, if Plaintiff does so, "then a rebuttable presumption of discrimination arises" and the burden shifts to the USPS "to articulate a legitimate nondiscriminatory reason for the adverse employment action." *Id.* (citation omitted). Third, if USPS meets its burden, "the burden shifts back to the plaintiff to show that the employer's proffered reason is merely a pretext for intentional discrimination." *Id.* (citation omitted). Plaintiff's disparate treatment claim cannot survive this analysis.

### A. USPS has established a legitimate, nondiscriminatory reason for placing Plaintiff off the clock.

Assuming for the sake of argument Plaintiff could establish a prima facie case, the record is clear that USPS has established legitimate, nondiscriminatory reasons for putting Plaintiff off the clock, and Plaintiff has not established pretext. *See Kosmicki v. Burlington N. & Santa Fe R. Co.*, 545 F.3d 649, 651 (8th Cir. 2008) (assuming without deciding the plaintiff had established a prima facie case but holding that he failed to show pretext).

Plaintiff alleges she was "put off the clock" on February 13, 2021, solely because of her disability. USPS counters Plaintiff was put off the clock not because of her disability, but because she refused to comply with USPS's face covering policy and the accommodation she had been granted in July 2020. ECF No. 17 at 36. The Eighth Circuit has routinely held violations of a company policy to be a legitimate, non-discriminatory reason for adverse employment actions. *See, e.g.*, *Nelson v. Lake Elmo Bank*, 75 F.4th 932, 937 (8th Cir. 2023) (violating of company's

8

harassment policy); *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 995 (8th Cir. 2011) (excessive tardiness and absences); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) (violating company's computer policy). Further, "[t]he burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Torgerson*, 643 F.3d at 1047.

Accordingly, the Court finds USPS has carried its burden at stage two.

**B.  Plaintiff fails to show USPS's proffered reasons were pretextual.**

Because USPS has established a legitimate, nondiscriminatory reasons for placing Plaintiff "off the clock," the burden shifts to Plaintiff to show pretext. This requires Plaintiff to "present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008) (quoting *Wilking v. Cnty of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998)); *see also Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005) ("To prove pretext, the employee must do more than show that the employment actions was ill-advised or unwise, but rather must show that the employer has proffered a phony excuse."). Stated differently, Plaintiff must show USPS's proffered reasons "did not actually motivate [its] decision" to place her off the clock, *Kosmicki*, 545 F.3d at 651, or those reasons are "unworthy of credence." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833–34 (8th Cir. 2002). The avenues for proving pretext include demonstrating that the employer's explanation "has no basis in fact," that the employer "shifted its explanation," or that "the employer deviated from [its] policies." *Sieden v. Chipotle Mexican Grill, Inc.*, 846 F.3d 1013, 1017 (8th Cir. 2017).

When making this inquiry, the Court must confine its role to deciding whether an "employer gave an honest explanation of its behavior, not whether its action was wise, fair, or correct." *McCay v. U.S. Dept. of Transp.*, 340 F.3d 695, 700 (8th Cir. 2003). "It is not unlawful

for a company to make employment decisions based upon erroneous information and evaluations." *Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 678 (8th Cir. 2013) (internal quotation marks omitted). The Court must be mindful that it does not sit as "a super-personnel department with the power to second-guess employers' business decisions." *Id.* (internal quotation marks omitted).

Plaintiff has no evidence of pretext. Plaintiff argues that "Defendant ignores that the same mandate was almost entirely unenforced in the workplace." Suggestions in Opp'n at 23, ECF No. 25. However, Defendant does not identify a causal connection between her disability and being placed off the clock. Stated differently, Plaintiff fails to show (1) how USPS's allegedly inconsistent enforcement of the face covering policy establishes disability discrimination when the policy is enforced, or (2) how Crisafulli's enforcement of the policy was based on Plaintiff's disability and not because she violated the face covering policy. Crisafulli and Plainitff never discussed Plainitff's disability or her prior supervisor's alleged practice of letting her work without a face shield. Plaintiff's belief that she had been "tacitly exempted from the [face covering] mandate she allegedly violated," does not magically transform Crisafulli's conduct into disability discrimination. *See id.*

In sum, Plaintiff makes conclusory statements based on mere speculation and conjecture. This is insufficient to either prove pretext or to defeat summary judgment. *See Mann*, 497 F.3d at 825. Accordingly, USPS is entitled to summary judgment on Count I.

**II.     Defendant has demonstrated it is entitled to summary judgment on Plaintiff's retaliation claims.**

Count II alleges USPS retaliated against Plaintiff because she requested a reasonable accommodation from the face covering mandate. This claim is without merit. To establish an unlawful retaliation claim, Plaintiff must show "(1) she engaged in a statutorily protected activity,

(2) the employer took an adverse action against her, and (3) there was a causal connection between the adverse action and the protected activity." *Hill*, 737 F.3d at 1218. And "a plaintiff generally must present *more than a temporal connection* between protected activity and an adverse employment action." *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1036 (8th Cir. 2016) (internal quotation marks omitted) (emphasis in original).

Plaintiff fails to establish a prima facia case of retaliation because she cannot show causation. Plaintiff's retaliation argument consists of two sentences. *See* Suggestions in Opp'n at 25, ECF No. 25. She contests summary judgment by noting that Defendant's argument "is clearly controverted by the fact that Plaintiff first requested an exemption from the mask mandate in July 2020." *Id.* Yet, Plaintiff provides no case law, relevant facts, or legal analysis showing how her request for an exemption precludes summary judgment.

Plaintiff's two requests for reasonable accommodation are protected activities. However, Plaintiff fails to establish a causal connection between these requests and any adverse action taken by USPS. First, Plaintiff was placed off the clock seven months after requesting and being granted her July 2020 accommodation. Plaintiff alleges no causal connection between these events, and even if she did, the temporal proximity between these events is too attenuated to support any alleged causation. *See Hill*, 737 F.3d at 1219 (finding ten days between a protected activity and an adverse action too attenuated to support causation).

Second, Plaintiff faced no adverse employment action following her March 2021 reasonable accommodation request. After reviewing Plaintiff's medical documentation, USPS placed Plaintiff on light duty—allowing her not to wear a face covering—and to leave work by 5:30 p.m.[5] To the extent Plaintiff contends Crisafulli yelling at her on May 10 and assigning her

---

[5] Plaintiff contends the light duty assignment—*i.e.*, USPS granting her accommodation request—was USPS's "hoop to jump through so they could legally bully" her. Suggestions in Opp'n ¶ 81, ECF No. 25. Even if Plaintiff's light

more mail than she could deliver before 5:30 p.m. was retaliatory, Plaintiff provides no legal support suggesting these acts constitute adverse actions for purposes of her retaliation claim, or that they were causally connected to her March 2021 accommodation request.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## **Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Date:     October 3, 2023                    /s/ Greg Kays
                                             GREG KAYS, JUDGE
                                             UNITED STATES DISTRICT COURT

---

duty assignment could be construed as an adverse employment action that satisfies the causation requirement, Plaintiff's claim fails because she cannot show pretext under the *McDonnell Douglas* burden-shifting framework. *See Hill*, 737 F.3d at 1218.